☑ Original ❒ D

CLERK'S OFFICE
A TRUE COPY
Apr 23, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information associated with cellular number 414-343-6988 ("TARGET ACCOUNT F), that is stored at premises controlled by Apple, as further described in Attachment A-2.

Case No. 25-M-391 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the Northern District of California *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 5-7-25 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. Stephen C. Dries.
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ________.

Date and time issued: 4-23-25. 9:15 am

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ________________

*Executing officer's signature*

*Printed name and title*

# <u>ATTACHMENT A-2</u>

## Property to Be Searched

This warrant applies to information from the iCloud account associated with the following cellular number 414-343-6988 ("**TARGET ACCOUNT F**") that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by Apple Inc. (“Apple”)

To the extent that the information described in Attachments A-1 and/or A-2 is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachments A-1 and/or A-2:

a. All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers (“UDID”), Advertising Identifiers (“IDFA”), Global Unique Identifiers (“GUID”), Media Access Control (“MAC”) addresses, Integrated Circuit Card ID numbers (“ICCID”), Electronic Serial Numbers (“ESN”), Mobile Electronic Identity Numbers (“MEIN”), Mobile Equipment Identifiers (“MEID”), Mobile Identification Numbers (“MIN”), Subscriber Identity Modules (“SIM”), Mobile Subscriber Integrated Services Digital Network Numbers (“MSISDN”), International Mobile Subscriber Identities (“IMSI”), and International Mobile Station Equipment Identities (“IMEI”);

c. The contents of all emails associated with the accounts from September 1, 2024 to the present, including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the accounts from September 1, 2024 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, those violations involving Javier CARTAGENA-COLON and others known and unknown, and occurring after October 1, 2024, to the present, including, for each account or identifier listed on Attachments A-2 and/or A-2, information pertaining to the following matters:

(a) The sale and distribution of illegal drugs and the laundering of proceeds of drug sales;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to drug trafficking, including records that help reveal their whereabouts.

CLERK'S OFFICE
A TRUE COPY
Apr 23, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with cellular number 414-343-6988 ("TARGET ACCOUNT F), that is stored at premises controlled by Apple, as further described in Attachment A-2.

Case No. 25-M-391 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2.

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❒ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b), and 846 | Distribution of controlled substances and conspiracy to distribute and to possess with intent to distribute controlled substances; Use of communication facility to facilitate drug trafficking, |

The application is based on these facts:

See attached Affidavit.

❒ Continued on the attached sheet.

❒ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Tyler Fink Digitally signed by Tyler Fink Date: 2025.04.22 13:05:41 -05'00'

*Applicant's signature*

Tyler Fink, USPIS Postal Inspector

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 4-23-25

*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Tyler Fink, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information from the iCloud accounts associated with the following cellular numbers

2. 414-309-5124 ("**TARGET ACCOUNT E**"), and

3. 414-343-6988 ("**TARGET ACCOUNT F**").

**TARGET ACCOUNTS E** and **F** are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachments A-1 and A-2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

4. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have been employed as a full-time law enforcement officer since June 2014.

5. The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, 3061 with the enforcement of laws governing the use and movement of the United States Mail, including, but not limited to, the

misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, identity theft, and narcotics trafficking involving the U.S. Mail.

6. I am currently assigned to the USPIS Milwaukee Office, Multi-function team, as well as being placed on the High Intensity Drug Trafficking Area ("HIDTA") Interdiction Task Force. The USPIS Milwaukee Office investigates USPS customers involving narcotics, prohibited mailings, controlled substances, and other matters related to the Postal Service. The Milwaukee office's team has intercepted numerous parcels, which were found to contain narcotics or proceeds of narcotics trafficking and other criminal activity.

7. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps.

8. As a part of my duties, I investigate criminal violations relating to narcotics trafficking offenses, including violations of Title 21, United States Code, Sections 841, 843, and 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 924(a), and 924(c). In the course of my experience, I have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, including cellular telephones and other electronic telecommunication devices.

9. I have had formal training in the investigation of drug trafficking. I have worked with informants in the investigation of drug trafficking. I have participated in the execution of

numerous search warrants in which controlled substances, firearms, drug paraphernalia, and monies were seized.

10. This affidavit is based upon my personal knowledge and upon information provided to me by other federal, state, and local law enforcement officers during the course of their official duties. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

11. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

12. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1), 843(b), and 846 have been committed by Javier CARTAGENA-COLON ("CARTAGENA-COLON") and others known and unknown. There is also probable cause to search the information described in Attachments A-1 and A-2 for evidence and instrumentalities of these crimes further described in Attachment B.

**JURISDICTION**

13. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

14. Case agents are currently investigating Miguel CARTAGENA-MIRANDA (DOB: XX/XX/1990) and Maleny DEL VALLE-ROSA (DOB: XX/XX/1992), who are shipping large

amounts of cocaine into the Eastern District of Wisconsin from Puerto Rico to Jeronis MONTERO (DOB: XX/XX/1997), Javier CARTAGENA-COLON (DOB:XX/XX/1987), and Leonardo PEREZ (DOB: XX/XX/2004). Case agents believe that this Drug Trafficking Organization (DTO) has used and continues to use fictious names to send parcels through the USPS to Milwaukee, Wisconsin. During the course of the investigation, case agents have seized and searched two of the suspected DTO-associated parcels pursuant to search warrants. Each parcel was found to contain approximately one kilogram of cocaine.

15. The investigation began in 2022, at which time, case agents began investigating Ricardo MORENO-CRUZ ("MORENO-CRUZ") (DOB: XX/XX/1985) for receiving large amounts of cocaine laden USPS parcels shipped to him from CARTAGENA-MIRANDA. On May 22, 2023, MORENO-CRUZ was arrested after a controlled delivery and a search warrant was executed at his residence. In a post-Miranda interview with MORENO-CRUZ, he advised he had multiple cocaine suppliers in Puerto Rico, and one source of supply for him had been CARTAGENA-MIRANDA. According to MORENO-CRUZ, CARTAGENA-MIRANDA would ship one to two kilograms of cocaine in USPS parcels to MORENO-CRUZ for more than a year. MORENO-CRUZ would pay CARTAGENA-MIRANDA approximately $20,000 per kilogram. MORENO-CRUZ provided consent to case agents to search and download the contents of the cell phones in his possession when he was taken into custody. After a review of the phone's content, case agents located a conversation between MORENO-CRUZ and "Sugar White" through Facebook messenger. A review of the "Sugar White" Facebook profile showed the profile picture was of CARTAGENA-MIRANDA. The Facebook messenger conversation between CARTAGENA-MIRANDA and MORENO-CRUZ was from March 2023 to May 2023. Both

subjects appeared to be discussing the price of a kilogram of cocaine ranging from $18,000 to $19,500.

16. MORENO-CRUZ was later criminally charged for his participation in this drug trafficking organization. On January 9, 2024, MORENO-CRUZ pled guilty to two counts of possession with intent-cocaine and possession of a firearm by a convicted felon. See State of Wisconsin v. Richard Moreno, Milwaukee County Court Case 2023CF002604.

17. I review Postal Service records and labels of parcels delivered to the state of Wisconsin from source narcotics areas or sent to those source narcotics areas from Wisconsin. I do this because I know, based on training and experience, drug traffickers will sometimes use USPS Priority Mail service, which is the intended USPS two-day delivery product. Based on my training and experience with the USPIS, I know drug traffickers use Priority Mail delivery service because of its reliability and the ability to track the article's progress to the intended delivery point. In my training and experience, traffickers will often use fictitious names, phone numbers, and/or addresses as well as incomplete names and addresses in an attempt to hide their trafficking efforts from law enforcement.

18. I know, based on my training and experience, Puerto Rico is a trans-shipment point for controlled substances. As such, controlled substances are frequently transported from Puerto Rico via USPS, and the proceeds from the sale of the controlled substances are frequently returned to Puerto Rico via USPS and/or other means.

19. As of March 2025, case agents have located more than 30 suspicious parcels that were sent from Puerto Rico to the Milwaukee, Wisconsin area, and that are suspected to be associated with this DTO. It appears that CARTAGENA-MIRANDA, who is believed to be located in Puerto Rico, is orchestrating the shipment of cocaine to Milwaukee, Wisconsin. Through

the course of the investigation, case agents have received copies of the Post Office surveillance video for many of the parcels shipped from Puerto Rico, which videos depict CARTAGENA-MIRANDA and DEL VALLE-ROSA, also believed to reside in Puerto Rico, shipping many of the various suspected cocaine laden parcels.

*IP Address Subscribed to Julio VARGAS Tracked SUBJECT PARCEL 22*

20. On September 21, 2023, case agents were made aware of USPS Priority Mail parcel 9505510336373263233430 ("SUBJECT PARCEL 22"). SUBJECT PARCEL 22 was a USPS large flat rate parcel weighing approximately 8 lbs. 11 oz. The shipping label for SUBJECT PARCEL 22 indicated it was from "Carla Jimenez Lopez Urb. Reparto Santa Teresita M 15 Calle 25 Bayamon PR 00956". SUBJECT PARCEL 22 bore a handwritten label addressed to "Angel Threatt Gonzalez 2441 N Dr William Finlayson St Milwaukee WI 53212". SUBJECT PARCEL 22 was postmarked on September 20, 2023, in Sabana Seca, Puerto Rico 00952 at approximately 10:28 AM. The postage paid was $22.80.

21. On September 26, 2023, case agents applied for a federal search warrant for SUBJECT PARCEL 22. On September 27, 2023, the search warrant was issued by United States Magistrate Judge Stephen Dries in the Eastern District of Wisconsin. Upon executing the search warrant on SUBJECT PARCEL 22, case agents discovered one vacuum sealed bag of a white powdery substance, suspected to be cocaine, wrapped in multiple layers of vacuum sealed bags, plastic wrap, and carbon paper. Three additional smaller plastic bags containing unknown powders were located within these wrappings. The brick of suspected cocaine had a gross weight of approximately 1,028 grams. The suspected cocaine field tested positive for cocaine HCl. The unknown powders were also tested, but they came back as inconclusive.

22. The drug packaging, suspected cocaine, and the additional three unknown powders were later sent to the USPIS Forensic Laboratory for analysis. Certified laboratory testing revealed the presence of the following controlled substances:

a. Approximately 1,010.8 grams of cocaine hydrochloride and caffeine;

b. Approximately 0.4562 grams of heroin, fluorofentanyl, fentanyl, and procaine;

c. Approximately 0.9856 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine; and

d. Approximately 1.2323 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine.

23. 18. A latent print examination of SUBJECT PARCEL 22 and its contents found CARTAGENA-MIRANDA's prints were located on multiple locations including the items within the parcel, the adhesive side of clear tape, and pieces of green plastic wrap.

24. A review of the USPS business records indicated an unknown person(s) was using a specific and unique method to track SUBJECT PARCEL 22. A subpoena return from AT&T indicated the Internet Protocols ("IP") used to track the parcel was subscribed to Julio VARGAS ("VARGAS"), 3908 N. 19th Place, Unit 1 Unit 1, Milwaukee, Wisconsin 53206, (262)900-5023. VARGAS was on probation for a previous felony drug case through the state of Wisconsin. On October 19, 2023, case agents were notified by the Milwaukee Police Department that VARGAS was murdered on this date. Phone records for VARGAS's phone number provided by AT&T above showed his phone had multiple phone contacts with 939-324-5219. The subscriber information for 939-324-5219 was listed as CARTAGENA-MIRANDA. All of the phone contacts were made on August 24, 2023.

25. On October 2, 2023, case agents received a copy of the Post Office surveillance video, which depicted DEL VALLE-ROSA shipping SUBJECT PARCEL 22.

*CARTAGENA-MIRANDA Ships a Parcel to CARTAGENA-COLON*

26. On January 27, 2025, CARTAGENA-MIRANDA was depicted on Post Office surveillance video in Bayamon, Puerto Rico, while operating what appeared to be a silver Honda Accord with tinted windows, shipping USPS Priority Mail parcel 9505510690125027094604 ("SUBJECT PARCEL 29"). SUBJECT PARCEL 29 was a USPS large flat rate parcel weighing approximately 8 lbs. 7 oz. The shipping label for SUBJECT PARCEL 29 indicated it was from "Josue Rivera Calle Perla del Sur I28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 29 bore a handwritten label addressed to "Carlos Garcia 1032 W Rogers St. Milwaukee WI 53204". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. On January 30, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 29. After the parcel was delivered, an associate of CARTAGENA-COLON's, later identified as Juan GARCIA-PAGAN, placed the parcel into a black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843 ("Subject Vehicle 1") and the vehicle then immediately left the area. Subject Vehicle 1 was suspected to be driven by CARTAGENA-COLON. Due to the tinted windows on Subject Vehicle 1, case agents could only decipher a male subject was the driver. The Wisconsin Department of Transportation ("DOT") records showed Subject Vehicle 1 was registered to April Maria Puentes at 719 W. Madison Street Upper, Milwaukee, Wisconsin. The Wisconsin Circuit Court database showed CARTAGENA-COLON has three separate court cases (2019CF003035, 2019PA002280PJ, and 2020TR013714) where his address on record is either 719 W. Madison Street or 719 W. Madison Street Upper. This same database showed paternity court case 2024PA000703PJ was between CARTAGENA-COLON and Puentes. The address on record for Puentes was 719 W. Madison Street Lower. A review of the Wisconsin Department of Corrections ("DOC") database showed CARTAGENA-

COLON is currently on parole for 1st Degree Recklessly Endangering Safety, and he has several family members shown as living at 719 W. Madison Street Upper. CARTAGENA-COLON also has GARCIA-PAGAN listed as a friend living at 1032 W. Rogers Street Apartment 2, Milwaukee, Wisconsin. CARTAGENA-COLON has VARGAS listed on his DOC documentation as a cousin living at 3908 N. 19th Place, Milwaukee, Wisconsin. This appears to be the same VARGAS as previously mentioned above, who is the brother of MONTERO and who was associated to the seizure of SUBJECT PARCEL 22. Based on this investigation, case agents believe SUBJECT PARCEL 29 is consistent with containing approximately one kilogram of cocaine.

*Parcel Shipped by CARTAGENA-MIRANDA to MONTERO and CARTAGENA-COLON*

27. On February 3, 2025, CARTAGENA-MIRANDA was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico shipping USPS Priority Mail parcel 9505510336375034537808 ("SUBJECT PARCEL 30"). SUBJECT PARCEL 30 was a USPS large flat rate parcel weighing approximately 7 lbs. 1 oz. The shipping label for SUBJECT PARCEL 30 indicated it was from "Javier Pagan Calle Perla del Sur I 28 Reparto Flamingo Bayamon P.R. 00959". SUBJECT PARCEL 30 bore a handwritten label addressed to "Oscar Vargas 2475 S. 5th St. Milwaukee W.I. 53207". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. On February 5, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 30. Upon arrival to the area, CARTAGENA-COLON's vehicle, Subject Vehicle 1, was parked in the area. Approximately 15 minutes after SUBJECT PARCEL 30 was delivered to either the side door or the rear of the residence, MONTERO and CARTAGENA-COLON emerged from the same area as where SUBJECT PARCEL 30 was delivered. Both subjects entered Subject Vehicle 1, CARTAGENA-COLON was the driver, and MONTERO was the front seat passenger. They briefly left the area

and later returned. Both subjects walked through the front door of 2475 S. 5th Street. A short time later, CARTAGENA-COLON, a small child, and MONTERO again left the residence and drove away in Subject Vehicle 1. Based on this investigation, case agents believe SUBJECT PARCEL 30 is consistent with containing approximately one kilogram of cocaine.

*Parcel Picked Up by CARTAGENA-COLON and MONTERO*

28. On February 25, 2025, CARTAGENA-MIRANDA was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico, while operating a silver Honda Accord with tinted windows bearing Puerto Rico license plate JNM455 registered to DEL VALLE-ROSA, shipping USPS Priority Mail parcel 9505510336375056549902 ("SUBJECT PARCEL 37"). SUBJECT PARCEL 37 was a USPS large flat rate parcel weighing approximately 8 lbs. 7 oz. The shipping label for SUBJECT PARCEL 37 indicated it was from "Bryan Rojas Ext La Inmaculada DD7 Calle 4 Toa Baja PR 00949". SUBJECT PARCEL 37 bore a handwritten label addressed to "Enrique Sanchez 4122 W. Orchard St Milwaukee WI 53215". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. On February 27, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 37. Prior to its delivery, case agents observed CARTAGENA-COLON's vehicle, Subject Vehicle 1, circling the area as if he was conducting counter surveillance. At approximately 11:54 a.m., Subject Vehicle 1 parked directly in front of 4122 W. Orchard Street on the southside of the street. Subject Vehicle 1 was facing eastbound and allowed the occupants of the vehicle to be able to see when the USPS letter carrier would be approaching the residence. At approximately 12:52 p.m., case agents observed the USPS letter carrier delivery mail in the area. At approximately 12:59 p.m., CARTAGENA-COLON exited the driver's door of Subject Vehicle 1 and walk directly onto the front porch of 4122 W. Orchard Street and out of view of case agents. At approximately 1:00 p.m., the letter

carrier delivered SUBJECT PARCEL 37. At approximately 1:04 p.m., case agents observed CARTAGENA-COLON and a small child walk off of the front porch of the residence while CARTAGENA-COLON was carrying what appeared to be SUBJECT PARCEL 37 and a white bag. Case agents observed CARTAGENA-COLON put both SUBJECT PARCEL 37 and the white bag into the trunk of Subject Vehicle 1 while the small child was placed into the rear seat of Subject Vehicle 1. Shortly after, case agents observed an unknown female exit the residence and also get into the rear driver side seat of Subject Vehicle 1. Subject Vehicle 1 then left the area. Case agents continued surveillance by following the vehicle. Subject Vehicle 1 drove directly to 2158 S. 18th Street. At approximately 1:14 p.m., case agents observed CARTAGENA-COLON, the unknown female, and the small child exit Subject Vehicle 1 and enter the residence through the front door. Soon after entering the residence, CARTAGENA-COLON exited the residence, sat in the driver's seat of Subject Vehicle 1, and drove away. Case agents continued to follow the vehicle. The vehicle drove directly to 2475 S. 5th Street. At approximately 1:24 p.m., case agents observed Subject Vehicle 1 park directly in front of the residence and saw CARTAGENA-COLON exit the vehicle and retrieved what appeared to be SUBJECT PARCEL 37 out of the trunk. Case agents then observed MONTERO exit the front passenger seat of vehicle. Both CARTAGENA-COLON, who was carrying SUBJECT PARCEL 37, and MONTERO then walked through the front door of 2475 S. 5th Street. Based on this investigation, case agents believe SUBJECT PARCEL 37 is consistent with containing approximately one kilogram of cocaine.

*Tracker Warrant for CARTAGENA-COLON's Vehicle*

29. On February 27, 2025, Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") Robert Gregory applied for and received a tracking warrant for an electronic tracker to be placed on Subject Vehicle 1 (the black 2018 Chevrolet Impala bearing Wisconsin

license plates AUC9843). Subject Vehicle 1 has been observed being driven by CARTAGENA-COLON on multiple occasions.

*Subject Vehicle 1 in the Delivery Area of SUBJECT PARCEL 40*

30. Throughout this investigation, case agents were aware Subject Vehicle 1 frequents the area of 2158 S. 18th Street. Case agents have also conducted surveillance on CARTAGENA-COLON and Subject Vehicle 1. On multiple occasions, case agents have observed CARTAGENA-COLON park Subject Vehicle 1 in the area of 2158 S. 18th Street and go in and out of the front door of 2158 S. 18th Street. Case agents are aware drug traffickers will often times compartmentalize their drug trafficking operation in an effort to hinder law enforcement investigations and minimize their exposure during law enforcement intervention. Specifically, case agents are aware drug traffickers often use separate locations to store the bulk of their drugs and/or drug proceeds separate from the residence that they reside at. The residence located at 2158 S. 18th Street could be characterized as a "stash house", which is a reference to a place where individuals clandestinely store illegal drugs and/or drug proceeds.

31. On March 6, 2025, CARTAGENA-MIRANDA was depicted on Post Office surveillance video in Bayamon, Puerto Rico, shipping USPS Priority Mail parcel 9505512222105065053891 ("SUBJECT PARCEL 40"). SUBJECT PARCEL 40 was a USPS large flat rate parcel weighing approximately 8 lbs. 9 oz. The shipping label for SUBJECT PARCEL 40 indicated it was from "Bryan Rojas Calle 25 V5 Urb. Royal Town Bayamon PR 00956". SUBJECT PARCEL 40 bore a handwritten label addressed to "Vanessa Citro 2155 S 18th St. Milwaukee WI 53215". SUBJECT PARCEL 40 was delivered on March 8, 2025, at approximately 1:00 p.m. A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. The destination address of SUBJECT PARCEL 40 is located

directly across the street from CARTAGENA-COLON's suspected "stash house", located at 2158 S 18th Street. On March 10, 2025, case agents were monitoring the GPS data for the location of Subject Vehicle 1 which is commonly operated by CARTAGENA-COLON. The historical data for March 8, 2025, showed Subject Vehicle 1 was in the area of the destination address, 2155 S 18th Street, of SUBJECT PARCEL 40 prior to its delivery. Approximately three minutes after SUBJECT PARCEL 40 was delivered, Subject Vehicle 1 then left the area and did not return for the remainder of the day. Case agents believe CARTAGENA-COLON was in the area to take possession of SUBJECT PARCEL 40 after it was delivered. Based on this investigation, case agents believe SUBJECT PARCEL 40 is consistent with containing approximately one kilogram of cocaine.

*Identification of TARGET ACCOUNTS*

32. On March 5, 2025, case agents issued a subpoena, served on Verizon, for the suspected telephone number of CARTAGENA-COLON's suspected girlfriend April PUENTES, 414-323-0627. One of the top callers for her was 414-309-5124 ("**TARGET ACCOUNT E**"). Through further analysis from other call data collected through the entirety of the investigation, case agents found phone number 414-343-6988 ("**TARGET ACCOUNT F**").

33. Phone toll analysis between December 17, 2024, and March 8, 2025, for a phone number suspected to be used by MONTERO, 414-712-4799, reflected that phone number 414-309-5124 ("**TARGET ACCOUNT E**") was in contact with MONTERO. Specifically, during this time frame, MONTERO's phone number was in contact with 414-309-5124 ("**TARGET ACCOUNT E**") on more than 80 different occasions.

34. Phone toll analysis for December 17, 2024, for a phone number suspected to be used by MONTERO, 414-712-4799, reflected that phone number 414-343-6988 ("**TARGET**

**ACCOUNT F**") was in contact with MONTERO. Specifically, on this date, MONTERO's phone number was in contact with 414-343-6988 ("**TARGET ACCOUNT F**") on two occasions.

35. A review of Cash App records showed 414-309-5124 ("**TARGET ACCOUNT E**") had a Cash App profile associated with "Javier Cartagena" and a "$cashtag" name of "$moneymakinha23".

36. A review of Cash App records showed 414-343-6988 ("**TARGET ACCOUNT F**") had a Cash App profile associated with "Javier Cartagena" and a "$cashtag" name of "$javipaid2".

37. From their training and experience, case agents know individuals involved in drug trafficking often do not provide phone companies with their true information to conceal their identities from the phone company and any law enforcement officer that may have reason to request records regarding their service.

38. Based on the aforementioned, case agents believe phone numbers 414-309-5124 ("**TARGET ACCOUNT E**") and 414-343-6988 ("**TARGET ACCOUNT F**") are being used by CARTAGENA-COLON.

39. On April 11, 2025, case agents began to draft a message using an Apple product to the phone numbers 414-309-5124 ("**TARGET ACCOUNT E**") and 414-343-6988 ("**TARGET ACCOUNT F**"). When doing so, each of the numbers in the draft turned blue. Case agents know this is significant because when two Apple brand products are communicating, the messages appear blue, but when an Apple brand product is communicating with a non-Apple brand product, the messages are green. Therefore, case agents believe that **TARGET ACCOUNT E** and **TARGET ACCOUNT F** are being used through an Apple product.

## BACKGROUND CONCERNING APPLE[1]

40. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

41. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create,

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

42. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

43. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

44. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the "Find My" service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

45. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of

other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

46. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

47. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the

files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

48. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

49. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

50. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan

to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

51. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

52. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

53. Based on the forgoing, I request that the Court issue the proposed search warrant.

54. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A-2

**Property to Be Searched**

This warrant applies to information from the iCloud account associated with the following cellular number 414-343-6988 ("**TARGET ACCOUNT F**") that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I. Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachments A-1 and/or A-2 is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachments A-1 and/or A-2:

a. All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all emails associated with the accounts from September 1, 2024 to the present, including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the accounts from September 1, 2024 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, those violations involving Javier CARTAGENA-COLON and others known and unknown, and occurring after October 1, 2024, to the present, including, for each account or identifier listed on Attachments A-2 and/or A-2, information pertaining to the following matters:

(a) The sale and distribution of illegal drugs and the laundering of proceeds of drug sales;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to drug trafficking, including records that help reveal their whereabouts.